IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE GREAT AMERICAN FOOD
CHAIN, INC. and EDWARD SIGMOND,

        Plaintiffs,

v.                                        Civil Action No. 3:14-CV-01727-L-BK

ROBERT ANDREOTTOLA,
AMERICAN FRANCHISE CAPITAL
LLC, APPLE CENTRAL LLC,

        Defendants.

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Upon the District Court's *Order of Reference*, Doc. 12, this case has been referred to the undersigned for a recommendation on Defendant American Franchise Capital and Apple Central's *Motion to Dismiss for Lack of Jurisdiction*, Doc. 5. For the reasons that follow, the Court recommends that the motion be **GRANTED**.

**A.    BACKGROUND**

In March 2014, Plaintiffs filed a first amended petition in Texas state court, alleging that in or about July 2010, Plaintiff Great American Food Chain ("GAFC") entered into a contract with Defendant Robert Andreottola, by which Andreottola accepted the position of, *inter alia*, president and director of GAFC. Doc. 1-21 at 4-5. As relevant to the instant motion, Plaintiffs contend that in the summer of 2012, Andreottola sought and obtained a position with Defendants American Franchise Capital and Apple Central (collectively, "the AFC Defendants") despite the AFC Defendants' knowledge that Andreottola was still employed by GAFC. Doc. 1-21 at 5-7. Plaintiffs sued (1) Andreottola for breach of contract, fraud, breach of fiduciary duty and negligent misrepresentation; (2) the AFC Defendants for tortious interference with an existing

contract and with prospective contracts and business relationships; and (3) all Defendants for civil conspiracy.  Doc. 1-21 at 7-14.  The AFC Defendants then removed the action to this Court based on diversity jurisdiction, Doc. 1 at 2, and now move to dismiss the case against them for lack of personal jurisdiction, Doc. 5.

**B.     APPLICABLE LAW**

"Personal jurisdiction . . . is an essential element of district court jurisdiction, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quotation and internal quotation marks omitted).  When a non-resident defendant challenges personal jurisdiction with a motion filed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of demonstrating facts sufficient to support jurisdiction.  *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).  In resolving the jurisdictional issue, the "court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized methods of discovery." *Id.* (citation omitted).  If the court chooses to rule on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff may meet his burden by presenting a *prima facie* case that personal jurisdiction is present.  *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002).  Absent an evidentiary hearing, the court must accept as true the uncontroverted allegations in the complaint and resolve all factual conflicts in the plaintiff's favor.  *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000).  Nevertheless, a court need not credit conclusory allegations even if they are uncontroverted.  *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

To exercise jurisdiction over a non-resident defendant, a court must determine whether jurisdiction is authorized under the state's long-arm statute and if the exercise of jurisdiction

would comport with the Due Process Clause of the Fourteenth Amendment.  *Id.* at 867.  The Texas long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed by federal constitutional law.  *Id.*  Thus, to determine whether it has personal jurisdiction, this Court need only consider whether its exercise of jurisdiction in this case would comport with federal due process requirements.

Specific personal jurisdiction, the type at issue here, normally requires a showing that: (1) the non-resident defendant purposefully established sufficient minimum contacts with the forum state; (2) the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) the forum's exercise of personal jurisdiction in the particular case is reasonable (*i.e.*, comports with "fair play and substantial justice.").  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985).  A non-resident defendant establishes minimum contacts by (1) purposefully availing himself of the benefits of conducting activities in the forum state such that he "should reasonably anticipate being haled into court" there; or (2) purposely directing his activities at residents in the forum state and "litigation results from alleged injuries that arise out of or relate to those activities."  *Id.* at 472, 475-76 (1985) (quotations omitted); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Moreover, "an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the non-resident defendant's conduct."  *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999) (citation omitted).  Under this "effects test," if a defendant intentionally directs tortious activity at the forum state and the brunt of the injury is felt by the plaintiff in the forum state, then the defendant should reasonably anticipate being haled into court in that state.  *Calder v. Jones*, 465 U.S. 783, 788-89 (1984).

Additionally, minimum contacts must be determined by contacts the defendant himself creates with the forum state, not by contacts between the plaintiff (or third parties) and the forum state. Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014). The "minimum contacts" analysis the court must conduct looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there. Id. Thus, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum state . . ." Id.

If a plaintiff successfully shows that the defendant has minimum contacts with the forum state that relate to the plaintiff's claims, the burden then shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable. Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 271 (5th Cir. 2006). In considering whether exercising jurisdiction would offend "traditional notions of fair play and substantial justice," the court examines (1) the burden on the defendant; (2) the forum state's interests; (3) the plaintiff's interest in obtaining convenient, effective relief; (4) the judiciary's interest in efficiently resolving controversies; and (5) the state's interest in furthering important social policies. World-Wide Volkswagen, 444 U.S. at 292.

C.  **PARTIES' ARGUMENTS**

The AFC Defendants note that (1) American Franchise Capital, LLC ("AFC") is a Delaware limited liability company with its principal place of business in Connecticut; (2) Apple Central, LLC ("Apple Central") is a Kansas limited liability company with its principal place of business in Connecticut; (3) Andreottola is a Georgia resident, and he was in Georgia when the AFC Defendants made him a job offer; and (4) GAFC is a Nevada corporation with its principal place of business in Texas. Doc. 6 at 5, 33-34. The AFC Defendants argue that Plaintiffs have not alleged any jurisdictional facts showing sufficient minimum contacts between the AFC

Defendants and the State of Texas, and their claims against the AFC Defendants arise exclusively from the AFC Defendants' contacts with Andreottola, which occurred outside of Texas. Doc. 5 at 7, 9. Additionally, the AFC Defendants assert, specific jurisdiction cannot be conferred over either Plaintiffs' tortious interference or conspiracy claims because those claims do not arise from contacts with Texas. Doc. 5 at 10. The AFC Defendants aver that it is irrelevant that the effects of their allegedly interfering actions may have been felt in Texas because they did not purposefully direct their actions toward Texas. Doc. 5 at 10-12. The AFC Defendants argue that specific jurisdiction does not exist for Plaintiffs' conspiracy claim because conspiracy is a derivative tort, and no jurisdiction exists for any underlying tort. Doc. 5 at 12.

The AFC Defendants conclude that even if sufficient minimum contacts do exist, exercising jurisdiction over them would offend traditional notions of fair play and substantial justice. Doc. 5 at 13-15. In support of their motion to dismiss, the AFC Defendants have submitted the affidavit of William Georgas, an AFC manager, who avers that (1) he was the only person who dealt with Andreottola before extending a job offer to him; and (2) when he offered Andreottola the position, he was not aware that Andreottola was involved in any business dealings with any company or individual in Texas. Doc. 6 at 34.

Plaintiffs respond that the uncontroverted allegations of their petition and the documentation establish a conspiracy directed at two Texas residents to tortiously interfere with a contract and engage in misrepresentations, which caused Plaintiffs to suffer substantial damages in Texas, thereby conferring personal jurisdiction over the AFC Defendants. Doc. 10 at 11-13. Further, Plaintiffs assert that exercising personal jurisdiction over the AFC Defendants comports with traditional notions of fair play and substantial justice because Texas has a great interest in protecting the interests of its corporate and private citizens when they have sustained

significant financial losses and hardships that resulted directly from the AFC Defendants' intentional misconduct.  Doc. 10 at 13-14.  Alternatively, Plaintiffs request that the Court (1) grant them leave to conduct jurisdictional discovery and depose Georgas on the factual matters raised in the motion to dismiss; and (2) extend Plaintiffs' time to respond to the dismissal motion because evidence of the AFC Defendants' contacts with Texas is solely in the AFC Defendants' possession.  Doc. 10 at 15-17.

In reply, the AFC Defendants urge that jurisdictional discovery is not necessary or appropriate because (1) Plaintiffs' claims clearly do not arise from contacts with Texas; and (2) Plaintiffs have not identified any facts they hope to uncover nor have they explained how such discovery would produce information that would support their claim for specific jurisdiction.  Doc. 13 at 5-6.

**D.    ANALYSIS**

*1.  Minimum Contacts*

A careful review of the operative complaint reveals that the only direct contacts that Plaintiffs allege with Texas are between themselves and Andreottola during his employment negotiations and subsequent employment.  *See* Doc. 1-21 at 4-7 at ¶¶ 11-13, 16-19, 23.  All that they assert against the AFC Defendants is that they conspired with Andreottola to tortiously interfere with GAFC's contract with Andreottola by offering him a job despite allegedly knowing that he was contractually bound to GAFC.  Doc. 1-21 at 6-7.  They do not allege that this occurred in Texas.  Instead they suggest that the effects of the AFC Defendants' actions were felt in Texas where Plaintiffs sustained damages, and that personal jurisdiction can be exercised over the AFC Defendants even if they did not specifically direct their activities toward Texas.  Doc. 10 at 11-13 (citing *Calder*, 465 U.S. at 798).

> In determining where the injury occurred for jurisdictional purposes, actual injury must be distinguished from its resultant consequences, such as pain and suffering, economic effects or other collateral consequences that often stem from the actual injury. Recognizing that such collateral consequences may be far-reaching (particularly in a commercial tort situation such as the one before us), our precedent holds that consequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur.

*Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir.1996). The *Jobe* Court further cited approvingly a Second Circuit case in which that court noted that "in a commercial tort situation the place of the injury will usually be deemed to be the place where the critical events associated with the dispute took place." *Id.* at 753 n.3. (internal quotations and citations omitted). The court thus concluded that the critical events in that case were the crucial dealings and negotiations among the parties (which took place outside of New York). *Id.* The mere fact that the plaintiff was located in New York and experienced financial consequences there did not suffice for long-arm jurisdiction. *Id.* Here, even if Plaintiffs' allegations are accepted as true, none of the crucial dealings and negotiations among Defendants occurred in Texas.

Moreover, Plaintiffs misinterpret *Calder* by suggesting that personal jurisdiction can be exercised over the AFC Defendants even if they did not specifically direct their activities toward Texas. In *Calder*, specific jurisdiction over petitioners was found proper in California based on the "effects" of their Florida-based conduct where (1) an allegedly libelous news story concerned the California activities of a California resident; (2) the story impugned the professionalism of an entertainer whose television career was centered in California; (3) the article was drawn from California sources; (4) the brunt of the harm, in terms both of the respondent's emotional distress and the injury to her professional reputation, was suffered in California; and (5) the newspaper had its largest circulation in California. *Calder*, 465 U.S. at 788-90. As can be seen, the defendants in *Calder* indeed directed tortious activities toward California. *See Mullins v.*

7

*TestAmerica, Inc.*, 564 F.3d 386, 400 (5th Cir. 2009) (noting that the effects test in *Calder* does not supplant the need to demonstrate that a non-resident defendant has minimum contacts with the forum state that constitute purposeful availment, to wit, conduct by the defendant that invoked the benefits and protections of the state or was otherwise purposefully directed toward the state); *Revell*, 317 F.3d at 473 (holding that, under *Calder*, "the plaintiff's residence in the forum, and suffering of harm there, will not alone support [personal] jurisdiction.").

On several other occasions, the Court of Appeals for the Fifth Circuit has considered whether a plaintiff pled facts sufficient to show that a defendant had committed intentional torts that were purposefully directed at Texas such as to support personal jurisdiction. In *Central Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376 (5th Cir. 2003), the plaintiff alleged that the defendant was aware of the plaintiff's contractual relationship with a third party and intentionally attempted to interfere with that relationship by holding the third party's freight hostage in New Jersey and manipulating the price of freight delivery in that region. 322 F.3d at 384. The appellate court noted that not only was Texas the plaintiff's and the third party's home state, it was also the primary location of the plaintiff's business relationship with the third party. *Id.* Under those circumstances, the court held that it was not unreasonable for the defendant to expect to be haled into Texas court for tortious interference with the contract. *Id.*

In contrast, in *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869-70 (5th Cir. 2001), the appellate court held that the Texas district court lacked personal jurisdiction over the non-resident defendant which allegedly had tortiously interfered with the financing arrangements of a Maryland power plant. The sole "evidence" supporting personal jurisdiction was the plaintiff's allegation in its state court petition that the defendant knew the plaintiffs were Texas residents and that its actions could harm the plaintiffs in Texas. *Id.* at 869.

The court rejected the plaintiff's suggestion that "a nonresident defendant [is] subject to jurisdiction in Texas for an intentional tort simply because the plaintiff's complaint alleged injury in Texas to Texas residents regardless of the defendant's contacts." *Id.* at 870. The court continued:

> Such result would completely vitiate the constitutional requirement of minimum contacts and purposeful availment.  We refuse to ignore the limits of specific jurisdiction to allow Appellants to sue Appellee in the district court based on Appellants' self-serving allegations when the "potential" injury claimed by Appellants resulted from interference with financing agreements that have nothing to do with Texas except for the mere fortuity that Appellants reside there.

*Id.*  Put simply, there must be "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,' or 'purposefully directs' its efforts toward the forum State residents." *Id. at 869*.

Similarly, in *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772-73 (5th Cir. 2001), the Fifth Circuit rejected specific jurisdiction asserted under *Calder* when the damaged contractual relationship was negotiated outside Texas, contemplated no performance in Texas, was not governed by Texas law, and pertained to the sale of stock of a company that had no connection with Texas.  More recently, in *Mullins*, the Fifth Circuit explained that, in analyzing a tortious interference with a contract claim, "we determine whether the alleged tortfeasor expressly aimed his out-of-state conduct at the forum state by examining the nexus between the forum and the injured contractual relationship." *Mullins*, 564 F.3d at 402.  There, personal jurisdiction was supported where the defendant interfered with the plaintiff's right to payment under contracts governing the sale of a Texas company, the contracts were governed by Texas law and executed in Texas where the plaintiff resided, and the defendant was fully aware of the contract and purposefully aimed its conduct at the plaintiff in Texas.  *Id.*  The court observed that

9

the defendant should reasonably have anticipated being haled into a Texas court for directing its actions at a known, major creditor in Texas whose right to payment arose out of contracts that shared a strong connection with Texas.  *Id.*

In the case at bar, it is not clear where Andreottola's employment contract was negotiated, but it is governed by Texas law.[1]  Doc. 16 at 90.  Nevertheless, Andreottola's performance under the contract was to take place in Georgia as the restaurants that Plaintiffs acquired for him to operate were located there.  Doc. 16 at 4-5.  Finally, as discussed previously, the allegedly injurious acts did not take place in Texas.  *See* Jobe, 87 F.3d at 753 (5th Cir. 1996) ("In determining where the injury occurred for jurisdictional purposes, actual injury must be distinguished from its resultant consequences . . . [O]ur precedent holds that consequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur."); Hoffman v. L & M Arts, 774 F. Supp. 2d 826, 844 (N.D. Tex. 2011) (noting that the allegedly tortious acts occurred outside of Texas and finding that the plaintiff had not established personal jurisdiction over the defendant as to her tortious interference with a contract claim).

While Plaintiffs suggest that the tortious acts were the result of a conspiracy "directed at" Texas and with the intention to interfere with Andreottola's contract, these beliefs are unsupported by any factual averments.  Doc. 1-21 at 7 ("It is further Plaintiff's belief that AFC and Apple were fully aware of Andreottola's position and employment with [GAFC], as well as the financial status of [GAFC].  Plaintiffs further believe that AFC and Apple acted in concert with Andreottola to purposefully interfere with [GAFC's] contract with Andreottola.").  These conclusory allegations in Plaintiffs' petition are insufficient to confer specific jurisdiction over

---

[1] As Plaintiff acknowledges, Andreottola did not actually execute the employment agreement. Doc. 16 at 5.

this matter as to the AFC Defendants.  *Panda Brandywine*, 253 F.3d at 869.  In sum, it cannot be

said that Defendants 'purposefully direct[ed]' [their] efforts toward the forum State residents"

such as to establish minimum contacts with Texas.  *Id.*  Moreover, because the focus must be on

each individual defendant's contacts with the state, personal jurisdiction does not arise from any

of Andreottola's acts that may have been directed at Texas.  *Guidry*, 188 F.3d at 625.  Rather,

Plaintiffs must show that either the alleged conspiracy or AFC's and Apple's part in the

conspiracy was related to or arose out of their contacts with Texas.  *Id.*  This they have not done.

　　　*2.  Plaintiffs' Request to Conduct Jurisdictional Discovery*

　　　In determining whether Plaintiffs have established a prima facie showing for personal

jurisdiction, the Court can look beyond the pleadings and consider affidavits, interrogatories, or

any other type of discovery.  *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

Moreover, the Court has the discretion to decide whether, and to what extent, to permit discovery

regarding personal jurisdiction.  *See Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982).

However, "discovery on matters of personal jurisdiction . . . need not be permitted unless the

motion to dismiss raises issues of fact."  *Kelly v. Syria Shell Petroleum Development BV*, 213

F.3d 841, 855 (5th Cir. 2000) (quotation omitted).  For the court to grant jurisdictional discovery,

a plaintiff must make "a preliminary showing of jurisdiction."  *Fielding v. Hubert Burda Media,

Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d

446, 456 (3rd Cir. 2003)).  In *Fielding*, the Fifth Circuit cited with approval the Third Circuit's

standard that "[i]f a plaintiff presents factual allegations that suggest with reasonable

particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct

jurisdictional discovery should be sustained."  *Id.*  However, when "the lack of personal

jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly,* 213 F.3d at 855.

In the case at bar, even taking as true Plaintiffs' allegations as set forth in their complaint, they simply have not alleged enough against the AFC Defendants to establish sufficient minimum contacts and, thus, discovery would serve no purpose. *Id.* All that Plaintiffs allege is that the AFC Defendants offered Andreottola a job despite knowing that he worked for Plaintiffs, and that they acted in concert with Andreottola to purposely interfere with Plaintiffs' contractual relationship. Doc. 1-21 at 6-7. Assuming those allegations to be true, as the Court must, those activities simply are not sufficient to confer personal jurisdiction on this Court as to the AFC Defendants for the reasons outlined above. *Tornado Bus Co. v. Bus & Coach America Corp.,* No. 14-cv-3231-M, 2014 WL 7333873 *1, 5-6 (N.D. Tex. 2014) (Lynn, J.) (adopting the magistrate judge's recommendation to deny jurisdictional discovery where the plaintiff disagreed with the defendants as to the legal jurisdictional significance of the facts alleged, but there was no disputed issue of fact that rendered jurisdictional discovery necessary).

Additionally, Plaintiffs' suggestion that permitting discovery will allow them to investigate the AFC Defendants' contacts with Texas to shore up their jurisdiction argument is unavailing. Doc. 10 at 17. "The court need not allow a plaintiff to conduct a jurisdictional fishing expedition seeking facts to support" jurisdiction. *Bell Helicopter Textron, Inc. v. American Eurocopter, LLC,* 729 F. Supp. 2d 789, 798 (N.D. Tex. 2010) (McBryde, J.); *see also Kelly,* 213 F.3d at 857-58 (holding that the district court did not abuse its discretion in denying additional jurisdictional discovery given that the plaintiffs offered no basis to show that the proposed depositions of the defendant's corporate representatives would contradict those representatives' sworn declarations); *Combat Zone Corp. v. John/Jane Does 1-13,* No. 12-cv-

3927-B, 2013 WL 230382, at *2 (N.D. Tex. 2013) (Boyle, J.) (stating that a court may deny jurisdictional discovery where the plaintiff only offers speculation as to jurisdiction and is waging a "fishing expedition" seeking to establish jurisdictional facts). Accordingly, Plaintiffs' request for jurisdictional discovery should be denied.

**E.     CONCLUSION**

For the foregoing reasons, the AFC Defendants' *Motion to Dismiss for Lack of Jurisdiction*, Doc. 5, should be **GRANTED**.

**SO RECOMMENDED** on January 15, 2015.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE