IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE GREAT AMERICAN FOOD CHAIN, INC. and EDWARD SIGMOND, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:14-CV-1727-BK |
| ROBERT ANDREOTTOLA, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Upon the parties' consent to proceed before the Magistrate Judge, Doc. 25, this case has been transferred to the undersigned. The cause is now before the Court on *Defendant Robert Andreottola*'s *Second Motion for Summary Judgment on All Claims and Counterclaims*, Doc. 33. For the reasons that follow, the motion is **GRANTED**.

### A.    BACKGROUND

In March 2014, Plaintiffs filed a first amended petition in Texas state court alleging that, in July 2010, they were introduced to Defendant who was then working as a consultant with Amici Restaurants. Doc. 1-21 at 4. Plaintiffs contend that they met with Defendant to discuss their possible acquisition of certain restaurants and the franchise company owned by Amici Restaurants. Doc. 1-21 at 4. Plaintiffs claim that in connection with those negotiations, Defendant made numerous representations to them regarding the restaurants and franchise company, including the cash flow, earnings, and growth potential of the restaurant brand. Doc. 1-21 at 4. Defendant, Plaintiffs assert, ultimately negotiated an arrangement whereby Amici Restaurants sold certain restaurants to Plaintiff Great American Food Chain ("GAFC") upon Defendant's assurance that (1) the acquisition would generate sufficient cash flow to cover the

necessary expenses; (2) Defendant would become president and director of GAFC and president of Amici Enterprises pursuant to an employment agreement (the "Contract"); and (3) Defendant would manage the acquired restaurants. Doc. 1-21 at 4-5. To obtain the financing necessary to sustain Plaintiffs' business plan, Plaintiff Edward Sigmond ("Sigmond") alleges that he obtained a loan and secured it with his personal guarantee as well as a parcel of land that was previously unencumbered. Doc. 1-21 at 5.

Plaintiffs further allege that, following the restaurant acquisition via an asset purchase agreement ("APA"), they discovered that the financial status of the restaurants was worse than Defendant had represented. Doc. 1-21 at 5. Furthermore, in the summer of 2012, Defendant obtained a position with American Franchise Capital and Apple Central (collectively, "AFC") despite the fact that he was still employed by GAFC. Doc. 1-21 at 5-7. Plaintiffs then sued Defendant for breach of contract, fraud, breach of fiduciary duty, and negligent misrepresentation.[1] Doc. 1-21 at 7-14. Defendant filed a counterclaim for indemnification of attorneys' fees and costs and recovery of his unpaid salary and unreimbursed expenses. Doc. 1-17. The case was then removed to this Court based on diversity jurisdiction. Doc. 1 at 2. Defendant now moves for summary judgment on all of Plaintiffs' claims, as well as on his counterclaims. Doc. 33.

The evidence submitted on summary judgment demonstrates the following: In 2010, GAFC sought to acquire a group of restaurants in Georgia, which it eventually did in an APA which closed in mid-February 2011. Doc. 35 at 109 (Sigmond Dep.); Doc. 40-1 at 3 (Sigmond Decl. at ¶4). Prior to the execution of the APA, Defendant and Plaintiffs negotiated an agreement in February 2011 for Defendant to run the newly acquired restaurants as a director

---

[1] Plaintiffs have withdrawn their claims of civil conspiracy, unjust enrichment, and promissory estoppel, and Sigmond has withdrawn his breach of fiduciary duty claim. Doc. 39 at 15.

and president of GAFC.  Doc. 35 at 88 (Andreatolla Dep.); Doc. 40-3 at 16-17 (Sigmond Dep.). Defendant was not hired until after the APA closed.  Doc. 40-3 at 52 (Andreatolla Dep.). Sigmond would not have purchased the Amici restaurants if not for Defendant's commitment to run the restaurants.  Doc. 40-3 at 24-25 (Sigmond Dep.).

  Defendant told Sigmond that he was committed to helping GAFC grow as a company. Doc. 40-3 at 50 (Andreatolla Dep.).  Defendant did not sign the Contract because Sigmond did not want any employment agreements on record during the securities registration process, and Defendant also believed the terms would have to be renegotiated shortly, due to additional acquisitions by GAFC.  Doc. 40-3 at 50, 53, 60-61 (Andreatolla Dep.).  Defendant was first contacted by AFC regarding a possible job in April 2012, at which point he told his contact to "keep [him] in mind."  Doc. 40-3 at 56-58 (Andreatolla Dep.).  In April 2012, Sigmond secured outside financing in an effort to bring additional capital into GAFC, and he discussed that transaction with Defendant.  Doc. 40-1 at 7 (Sigmond Decl.).  Defendant knew that Sigmond had used personal property to secure a loan for GAFC, but did not tell him about the phone call from AFC because it was merely a call.  Doc. 40-3 at 61 (Andreatolla Dep.).  If Defendant had told Sigmond that he planned to leave GAFC, Sigmond would not have agreed to personally guarantee the loan or provide property as collateral for the loan.  Doc. 40-1 at 7 (Sigmond Decl.). GAFC did not pay Defendant on the scheduled pay dates of March 1, 2012, April 4, 2012, or May 6, 2012.  Doc. 35 at 88-89 (Andreatolla Decl.).  Defendant received the phone call from his AFC contact regarding a possible job with the new company after GAFC had begun to miss his salary payments.  Doc. 35 at 89 (Andreatolla Decl.).

  In May 2012, AFC faxed Defendant a document titled "Employment Agreement" that was expressly conditioned on whether AFC would be able to purchase a number of restaurants it

3

was attempting to acquire. Doc. 40-2 at 54 (Emp. Agr. stating that "[Andreatolla] agrees to work for [AFC] in the classification of Chief Operating Officer . . . [c]ommencing upon the full execution of that certain Asset Purchase Agreement between Applebee's Restaurants West LLC . . . and Applebee's Restaurants Kansas . . ."); Doc. 40-3 at 58 (Andreatolla Dep.). Defendant signed the Employment Agreement, which he viewed as a financial arrangement, but the signature is not dated. Doc. 40-3 at 60.

At the end of May 2012, Defendant informed GAFC's directors during a conference call to discuss an "austerity program" that he could not continue to work without a salary and thereby terminated his employment. Doc. 35 at 90 (Andreatolla Decl.). At that time, Sigmond wanted Defendant to stay on board and to let two other board members go, but Defendant replied that he could not afford to stay with GAFC because he was missing paychecks and GAFC was not reimbursing his expenses. Doc. 35 at 133-34 (Andreatolla Dep.). At the time he left GAFC, Defendant's net pay was $2,362.14. Doc. 35 at 88-89 (Andreatolla Decl.); Doc. 35 at 91 (paycheck). GAFC did not pay Defendant on three scheduled pay dates, for a total net amount of $7,086.42. Doc. 35 at 88-89 (Andreatolla Decl.). Andreatolla also incurred business expenses of $2,986.25 on behalf of GAFC, which were never recompensed despite monthly submissions for reimbursement that he made from January through May 2012. Doc. 35 at 89 (Andreatolla Decl.); Doc. 35 at 93-97 (expense reports); Doc. 35 at 137 (Andreatolla Dep.). Defendant began to work for AFC as its chief operating officer on August 6, 2012, six days before AFC acquired the first group of restaurants it had sought. Doc. 35 at 90 (Andreatolla Decl.); Doc. 35 at 132 (Andreatolla Dep.).

**B.     APPLICABLE LAW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.   Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted). Nevertheless, when ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Id.*

**C.     PARTIES' ARGUMENTS AND ANALYSIS**

*1. Sigmond's Standing*

Defendant first argues that Sigmond lacks standing to bring any claims against him because Sigmond only incurred an indirect injury through the alleged injury to GAFC as a shareholder, and he cannot sue in his own name or for his own benefit for a cause of action that belongs to GAFC. Doc. 34 at 16-17.

Sigmond maintains that he has standing to sue Defendant for fraud and negligent misrepresentation because he personally guaranteed a loan that he could not repay due to Defendant's actions. Doc. 39 at 15-17.

As a matter of law, a cause of action for injury to the property of a corporation or for destruction of its business lies with the corporation, not a shareholder. *Faour v. Faour*, 789 S.W.2d 620, 622 (Tex.App.—Texarkana 1990). This is so even though the harm may result in loss of earnings to the shareholder. *Id.* Thus, a corporate shareholder has no individual cause of action for personal damages caused solely by wrong done to the corporation. *Id.* Nevertheless, a shareholder may still bring suit if a director violates a duty arising from a contract or representation owing directly to the shareholder. *Id.* In that case, a shareholder may sue in a nonderivative action regardless of whether the corporation also brings suit. *Id.* For instance, an independent right to a suit for misrepresentation lies as long as the plaintiff can show that the defendant owed a duty to him or her. *Id.*; *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990) (holding that to recover individually, a stockholder must prove a personal cause of action and personal injury) *superseded by statute on other grounds as stated in Sneed v. Webre*, 465 S.W.3d 169, 185 n.10 (Tex. 2015).

In this case, it is clear that the financial injury Sigmond suffered by personally guaranteeing a loan, even though it was for the benefit of GAMC, is personal to him rather than to GAFC. This is sufficient to establish Sigmond's standing. *See Empire Life Ins. Co. of Am. v. Valdak Corp.*, 468 F.2d 330, 335-36 (5th Cir. 1972) (holding that a shareholder who had pledged stock as collateral for a loan could maintain suit as an individual pledger against the party in control of the corporation that intentionally depleted the value of the stock); *Buschmann v. Prof. Men's Ass'n*, 405 F.2d 659, 663 (7th Cir. 1969) (holding that standing existed for breach of

contract claim where plaintiff and bank to which corporation owed money entered into contract with defendant whereby plaintiff agreed to guarantee indebtedness of corporation to bank and defendant agreed to operate and manage plaintiff's business, but defendant allegedly breached contract by mismanaging the business).

    *2. Breach of Contract*

Defendant asserts that he did not sign the Contract with GAFC and, thus, GAFC cannot show the existence of a contract which could have been breached by his termination of his at-will employment. Doc. 34 at 17-18. Alternatively, Defendant argues that even if his employment was governed by the unsigned Contract, it does not alter his status under Texas law because the Contract expressly provides that his employment was at will and terminable by either party at any time. Doc. 34 at 19. Finally, Defendant contends that his employment obligations were excused by GAFC's failure to pay his salary for the last three months of his employment. Doc. 34 at 20-21.

Plaintiffs respond that while Defendant was free to terminate his relationship with GAFC at any time, he breached the Contract by failing to conduct himself as president and one of three directors in accordance with the terms of the Contract, GAFC's Code of Conduct, and GAFC's Bylaws by, *inter alia*, negotiating and accepting a different job. Doc. 39 at 17-20. Plaintiffs note that while Defendant did not execute the Contract, he assumed the contracted-for roles and reaped the Contract's benefits. Doc. 39 at 18. Further, they note that his employment obligations were not excused by GAFC's failure to pay his salary because Defendant actually controlled the budgets of the two companies and his own salary and could have paid himself if he had terminated other employees as was recommended to him. Doc. 39 at 20.

In reply, Defendant asserts that Plaintiffs' contention that Defendant controlled salary matters fails to address whether such salary was due, unpaid, and remains owed. Doc. 43 at 10. Thus, Defendant argues that Plaintiffs have failed to controvert his evidence that he was not paid. Doc. 43 at 10.

Under Texas law, to plead a claim for breach of contract, a plaintiff must allege: (1) the existence of a valid contract; (2) that he performed or tendered performance under the contract; (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages as a result of the breach. *Sport Supply Group, Inc. v. Columbia Cas. Co* ., 335 F.3d 453, 465 (5th Cir. 2003). As to the first element, an express contract arises when its terms are stated by the parties. *Harrison v. Williams Dental Group, P.C.*, 140 S.W.3d 912, 916 (Tex. App.—Dallas 2004). An implied contract can arise from the acts and conduct of the parties. *Id.* (citing *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972)). Such a contract exists when the facts and circumstances surrounding the parties' relationship, including their conduct and course of dealing, imply a mutual intention to contract. *Id.* Questions of contract formation must be resolved on objective standards, looking to the "meaning reasonably conveyed by the parties' actions and words, rather than their uncommunicated subjective intentions." *Fuqua v. Fuqua*, 750 S.W.2d 238, 245 (Tex.App.—Dallas 1988).

In this case, there is little doubt that, although the Contract was not signed by Defendant, the parties entered into an implied agreement through their actions and course of dealings whereby Defendant became president and a director of GAFC. As to the second element of performance, there is some dispute. The Contract required that Defendant's salary be "payable in regular installments in accordance with the normal payroll practices of the Company, in effect

8

from time to time, but in any event no less frequently than on a monthly basis." Doc. 35 at 190. Defendant states that Plaintiffs stopped paying him, while Plaintiffs assert that they did not have the power to do so because Defendant was in charge of salary matters.

Plaintiffs' argument misses the mark, however. They do not challenge Defendant's testimony that (1) he was told not to cash his March 14, 2012 paycheck and has never been paid those funds; (2) his March 28, 2012 paycheck was returned for insufficient funds; (3) in March or April of 2012, one of GAFC's directors told Sigmond that GAFC needed to implement an austerity program to survive, and that Defendant and others needed to be let go; and (4) in May 2012, the directors discussed the austerity program and who should be released from GAFC at which point Defendant decided to leave because he could not afford to stay with GAFC since he had not been getting paid. Doc. 35 at 88-89 (Andreatolla Decl.); Doc. 40-3 at 48-49, 133-34 (Andreatolla Dep.). Indeed, Sigmond himself testified that he did not make all of the payments that were due to Defendant. Doc. 40-3 at 26 (Sigmond Dep.). In short, Plaintiffs did not fully tender their performance under the terms of the Contract.

Even assuming, *arguendo*, that Plaintiffs did tender performance, Defendant did not breach the Contract because he was an at-will employee and free to leave at any time. Although Plaintiffs argue that Defendant breached GAFC's Code of Conduct and Bylaws, neither of those documents suggest that Defendant is anything other than an at-will employee. Indeed, it is well established that "employment is presumed to be at-will in Texas." *Midland Judicial Dist. Cmty. Supervision & Corr. Dep't v. Jones*, 92 S.W.3d 486, 487 (Tex. 2002) (per curiam). Thus, "any modification of the at-will status must be based on express agreements rather than implied agreements," and the agreement "must be clear and explicit." *Cote v. Rivera*, 894 S.W.2d 536, 540 (Tex.App.—Austin 1995). Consequently, "absent a specific agreement to the contrary,

employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). No such agreement exists in this case. Accordingly, Defendant is entitled to summary judgment on Plaintiffs' breach of contract claim.

    *3. Breach of Fiduciary Duty*

Defendant next argues that, as an at-will employee, he was entitled to seek and obtain alternative employment without any fiduciary obligation to disclose his efforts to GAFC. Doc. 34 at 19.

GAFC responds that as a corporate officer and director, Defendant owed it certain fiduciary duties, namely the duties of obedience, loyalty, and due care. Doc. 39 at 22. GAFC notes that a fiduciary duty encompasses, at minimum, a duty of good faith and fair dealing, and it requires one to place the interest of the other party before his own as well as a duty not to compete with the principal in matters relating to the subject matter of their transactions. Doc. 39 at 22-23. As such, GAFC argues that Defendant was required to provide notice of his intent to terminate his position, and he wrongfully breached his fiduciary duty to GAFC when he accepted employment with GAFC's competitor, AFC, while still engaged as GAFC's president and director. Doc. 39 at 23-24.

Defendant replies that there is no distinction between ordinary and executive level employees in terms of being able to terminate their at-will employment and doing so does not constitute a breach of fiduciary duty. Doc. 43 at 3-4.

Fiduciary duties are imposed by courts on some relationships because of their special nature. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002). Generally, the term fiduciary "applies to any person who occupies a position of peculiar confidence towards

10

another. It refers to integrity and fidelity. It contemplates fair dealing and good faith, rather than legal obligation, as the basis of the transaction." *Id.* Corporate officers' and directors' fiduciary duties and obligations are creatures of state common law and are often identical in nature. *Gearhart Indus., Inc. v. Smith Int'l, Inc*., 741 F.2d 707, 719 (5th Cir. 1984). Three broad duties stem from the fiduciary status of corporate directors, namely obedience, loyalty, and due care. *Id.*

The Supreme Court of Texas has warned, however, that "courts have been and should be careful in defining the scope of the fiduciary obligations an employee owes when acting as the employer's agent in the pursuit of business opportunities" because "an employer's right to demand and receive loyalty must be tempered by society's legitimate interest in encouraging competition." *Id.* at 201. To that end, the court quoted approvingly:

> An at-will employee may properly plan to go into competition with his employer and may take active steps to do so while still employed . . . Such an employee has no general duty to disclose his plans to his employer, and generally he may secretly join other employees in the endeavor without violating any duty to his employer . . . The general policy considerations are that at-will employees should be allowed to change employers freely and competition should be encouraged . . . There are, however, certain limitations on the conduct of an employee who plans to compete with his employer. He may not appropriate his employer's trade secrets . . . He may not solicit his employer's customers while still working for his employer . . ., and he may not carry away certain information, such as lists of customers. . . Of course, such a person may not act for his future interests at the expense of his employer by using the employer's funds or employees for personal gain or by a course of conduct designed to hurt the employer.

*Johnson*, 73 S.W.3d at 201-02 (quoting *Augat, Inc. v. Aegis, Inc.*, 565 N.E.2d 415, 420 (Mass. 1991)); *see also Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 284 (5th Cir. 2007) (finding that a fiduciary relationship between an employee and employer does not preclude the employee from making preparations to form a future competing business venture). Indeed, this ability to terminate employment, and even go into business in competition with one's former

11

employer, has been described as a constitutional right.  *Abetter Trucking Co., Inc. v. Arizpe*, 113 S.W.3d 503, 510 (Tex. App. – Houston [1st Dist.] 2003).

It is clear in this matter that Defendant served in a fiduciary capacity to GAFC.  *Gearhart Indus.*, 741 F.2d at 719.  Nevertheless, GAFC's argument that Defendant was required to provide advance notice of his intent to leave and that he wrongfully breached his fiduciary duty to GAFC when he accepted employment with AFC falls short.  The Supreme Court of Texas has observed that such actions do not constitute breach of fiduciary duty.  *Johnson*, 73 S.W.3d at 201-02.  Moreover, there is no evidence in the record to suggest that Defendant misappropriated GAFC's trade secrets, impermissibly solicited its customers, improperly used its funds for personal gain or otherwise attempted to injure GAFC.  As such, Defendant is entitled to summary judgment on GAFC's breach of fiduciary duty claim.

*4. Fraud and Negligent Misrepresentation*

Defendant next asserts that GAFC's claims for fraud and negligent misrepresentation are barred by its admission in its securities registration statement that it was relying only on the representations made in the APA to purchase Amici Restaurants.  Doc. 34 at 20-23.  Furthermore, Defendant contends that any statements he made are not actionable as a matter of law because they were not misstatements of an existing fact, but were instead his predictions of how GAFC would operate and perform financially following the restaurant acquisition.  Doc. 34 at 24-27.

Plaintiffs respond that Defendant misrepresented his ability to serve as GAFC's president and director and his willingness to manage and operate the restaurants for GAFC in Georgia.  Plaintiff asserts that in April and May 2012, Defendant also fraudulently told GAFC he would continue serving as GAFC's president and director even though he had already discussed

employment elsewhere and had even signed an Employment Agreement with AFC. Doc. 39 at 27-29. Plaintiff thus asserts that the disclaimer of reliance in the registration statement does not prevent GAFC from establishing its fraud and negligent misrepresentation claims because the disclaimer does not encompass the representations Defendant made to GAFC after the fact.

Defendant replies that any statements he made relating to his ability to serve as GAFC's president and director and his willingness to manage and operate their restaurants are non-actionable because they related to future conduct or, at most, constituted puffery. Doc. 43 at 9.

Under Texas law, the elements of fraud are that: (1) a material representation was made; (2) it was false; (3) when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) he made it with the intention that it should be acted upon by the party; (5) the party acted in reliance upon it; and (6) he thereby suffered injury. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998). To sustain a fraud claim based on a promise to act in the future, the plaintiff must show that the statement was made with the contemporaneous "intention, design and purpose of deceiving, and with no intention of performing the act." *Id.* (citing *Airborne Freight Corp. v. C.R. Lee Enterprises, Inc.*, 847 S.W.2d 289, 294 (Tex. App.—El Paso 1992).

The elements of a cause of action for negligent misrepresentation are that: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). For a negligent misrepresentation claim, the representation must be of an

*existing* fact, not future conduct or predictions. *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 357 (5th Cir. 1996).

Simply put, there is no evidence in the record to suggest that Defendant either negligently or fraudulently misrepresented his willingness to manage and operate the restaurants for GAFC at the time that he was engaged in employment discussions with Sigmond. The representations upon which Sigmond alleges he relied were made prior to the APA, which preceded Defendant's formal employment with GAFC. Thus, the representations related to future conduct as predicted by Defendant and are not actionable. *Clardy Mfg.*, 88 F.3d at 357. Plaintiffs have offered no evidence suggesting that Defendant recklessly made the representations to deceive Plaintiffs and with no intention of performing. *Johnson & Higgins*, 962 S.W.2d at 524.

For similar reasons, Plaintiffs' claim that Defendant misrepresented his ability to serve as GAFC's president and director fail. Plaintiffs have presented no evidence that Defendant misrepresented his abilities, and Plaintiffs actually admitted that they hired Defendant because of his past success with a similar brand and his knowledge of the demands and requirements of a publicly traded company. Doc. 35 at 72 (GAFC's First Supp. Obj. and Answers to Interrog.); Doc. 40-3 at 27 (Sigmond Dep.). Indeed, Sigmond testified that he did not believe that Defendant made any misrepresentation to him regarding his experience in the restaurant business. Doc. 35 at 117 (Sigmond Dep.).

As for Plaintiffs' final argument that Defendant misrepresented in April and May 2012 that he would continue serving as GAFC's president and director, Plaintiffs cite to insufficient evidence to support that claim. As an initial matter, Sigmond's declaration states only that at the time he sought the outside financing using his personal guarantee, Defendant "never mentioned to me his plan to leave" GAFC. Doc. 40-1 at 7 (Sigmond Dep.). While silence may constitute a

14

misrepresentation under some circumstances, there first must be a duty to speak. *HTM Rest., Inc. v. Goldman, Sachs & Co.*, 797 S.W.2d 326, 329 (Tex.App.—Houston [14th Dist.] 1990). Here, no such duty existed because Defendant was an at-will employee as discussed above. Further, the fact that Defendant received an unsolicited phone call from a competitor and subsequently negotiated a job offer contingent on a future transaction does not evidence any misrepresentation or fraud directed at Plaintiffs. Doc. 40-3 at 58-60. Accordingly, Defendant is entitled to summary judgment on Plaintiffs' claims for negligent misrepresentation and fraud.

   5. *Defendant's Counterclaim Against GAFC for Wages and Expenses Owed*

Defendant asserts that he is entitled to summary judgment on his claim for work performed and expenses advanced on behalf of GAFC. Doc. 34 at 29. He contends that as an at-will employee, his claim is one under implied contract or, alternatively, quantum meruit. Doc. 34 at 29. Under either theory of recovery, Defendant maintains that he is owed wages of $8,653.86 and expenses of $2,985.25. Doc. 34 at 29-30.

GAFC responds that it did not decide to stop paying Defendant's wages, it merely implemented an austerity program to defer salary for corporate personnel, and Defendant would have had to approve this measure before it took effect. Doc. 39 at 31. Further, GAFC argues that Defendant did not timely submit his expense reimbursement requests with supporting documentation in violation of GAFC policy.[2] Doc. 39 at 31-32. Sigmond also generally disputes the amount Defendant claims he is owed. Doc. 39 at 12; Doc. 40-1 at 8-9 (Sigmund Decl.).

---

[2] GAFC voluntarily waived several of its defenses to Defendant's counterclaims, Doc. 39 at 15, and has abandoned its reliance on the business judgment rule and proportionate responsibility statute by failing to brief those issues. *Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006). GAFC's remaining defenses seeking attorneys' fees and an offset would only have been available if it had prevailed on its claims.

Defendant replies that (1) Sigmond's "disagreement" that GAFC owes wages to him is merely the conclusory declaration of an interested party; (2) the submission of the austerity proposal does not establish that it was adopted and, in any event, Defendant is still due his salary; and (3) Sigmond's assertion that he did not control salary, but rather Defendant did, does not address whether such salary was due, unpaid, and remains owed.  Doc. 43 at 9-10.

To recover for breach of implied contract, Defendant must show the existence of a valid implied contract, performance or tender of performance by Defendant, a breach by GAFC, and damage resulting from that breach.  *See Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000).  Failure to pay money owed under a contract states a claim for breach of contract.  *Pineda v. Nationstar Mortgage, LLC*, No. 15-CV-1036-K, 2015 WL 6438154, at *5 (N.D. Tex. 2015) (Toliver, J.) adopted by 2015 WL 6460017 (N.D. Tex. 2015); *NTR Bullion Grp., LLC v. Liberty Metals Grp., LLC*, No. 13-CV-3945-D, 2013 WL 5637601, at *2 (N.D. Tex. 2013) (Fitzwater, C.J.).

GAFC's arguments are off target.  While GAFC may not have decided to stop paying Defendant's wages, the fact is that the wages were not paid and there is no dispute that they were owed.  Moreover, Defendant was told not to cash one paycheck and another bounced.  He received no further paychecks as it appears that GAFC was in dire straits by that time and considering the implementation of an austerity program.  Defendant also had not been reimbursed for several months' worth of expenses regardless of his compliance with corporate policy in terms of submitting supporting documents.

Upon review of the record, the Court concludes that Defendant adequately has proved the amount of salary he is owed by way of his affidavit testimony and the paycheck stub that he submitted into evidence.  Sigmund's statement that Defendant's salary request is incorrect based

16

on his review of records and discussion with unnamed accounting department employees is not sufficient to overcome Defendant's evidence on this claim. Accordingly, Defendant is entitled to an award of $8,653.86 from which tax withholding, FICA, and Medicare deductions must be made.

On the other hand, Defendant's request for reimbursement of his expenses is unsupported by any evidence other than Defendant's list of various charges. Doc. 35 at 93-97. As such, he has not met his burden of demonstrating that he is eligible for reimbursement of such charges. Therefore, Defendant is not entitled to summary judgment on his claim for reimbursement of expenses.

6.  *Defendant's Counterclaim Against GAFC for Indemnification*

Finally, Defendant asserts that GAFC's Bylaws unambiguously undertake an obligation to indemnify him for reasonable attorneys' fees and expenses incurred as a result of defending any claims made against him arising from his status as an officer and director of GAFC, which include the claims in this suit. Doc. 34 at 32-33.

GAFC responds that summary judgment on this claim should be denied because the present action was filed against Defendant in the right of the corporation and he violated his Contract and his duties of candor and loyalty to GAFC. Doc. 39 at 25-26. GAFC further refers to the applicable state statute, which governs the conditions under which corporations may indemnify officers, directors, and employees involved in litigation.

The parties agree that Defendant's counterclaim for indemnification is governed by Nevada law because GAFC is a Nevada corporation, and Texas law provides that the law of the state in which an entity is formed governs the internal affairs of the entity. TEX. BUS. ORG. CODE § 1.102; *Hollis v. Hill*, 232 F.3d 460, 465 (5th Cir. 2000). Typically, the right to corporate

indemnification of directors, officers, and the like is statutory in nature.  *Bedore v. Familian*, 125 P.3d 1168, 1173 (Nev. 2006).  An indemnification statute's chief purpose is to encourage capable people to serve as corporate directors knowing that "expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve." *Id.* (quotations omitted).

Nevada's indemnification statute provides for both discretionary and mandatory indemnification of officers, directors, and employees of corporations.  N.R.S. § 78.7502.  As relevant here, section 78.7502(3) is mandatory and provides that to the extent a corporate director or officer "has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections 1 and 2 . . ., the corporation shall indemnify him or her against expenses, including attorneys' fees, actually and reasonably incurred by him or her in connection with the defense."  N.R.S. § 78.7502(3); *see also Hawaii Management Alliance Ass'n v. Meek,* 190 Fed. App'x 542, 543 (9th Cir. 2006) (noting that section 78.7502 provides for the mandatory indemnification of a corporation's officer or employee when he is successful in defending litigation related to his employment).  Subsection two of § 78.7502 describes the type of proceeding for which mandatory indemnification applies as, *inter alia*, any suit by or on behalf of the corporation to procure a judgment in its favor due to the fact that the proposed indemnitee was a director of the corporation.  N.R.S. § 78.7502(2).

Similarly, GAFC's Bylaws provide that GAFC "shall indemnify every Indemnitee against reasonable expenses incurred by such person in connection with any Proceeding in which he is a witness or a named defendant or respondent because he served [as a director or officer] if

such person has been wholly successful on the merits or otherwise, in defense of the Proceeding."³ Doc. 40-2 at 38.

Here, it is clear that the underlying actions in this case stemmed from Defendant's employment as a director and officer of GAFC. Further, under the standard set forth in Section 78.7502(3), Defendant succeeded on the merits in defense of this action. Lastly, the suit was filed by or on behalf of GAFC to procure a judgment in its favor due to the fact that Defendant was a director and officer of GAFC. N.R.S. § 78.7502(2). Accordingly, Defendant is entitled to indemnification of his attorneys' fees and costs in this case. This result is further supported by GAFC's Bylaws because Defendant has incurred attorneys' fees and costs in this proceeding because "he served [as a director or officer]" of GAFC and he "has been wholly successful on the merits or otherwise, in defense of [this] Proceeding." Doc. 40-2 at 38.

At the time of filing Defendant's summary judgment motion, Defendant's attorneys' fees and expenses totaled $55,470.02. Doc. 35 at 151-65 (Uloth Decl. at Exh. B). While Defendant speculates about the future amounts he anticipates may be incurred, the Court declines to award predictive attorneys' fees. Accordingly, within 14 days of the date of this order, Defendant shall submit an amended declaration from counsel setting forth the current total attorneys' fees and expenses.

---

³ "Proceeding" is defined in the Bylaws as "any threatened pending, or completed action, suit or proceeding, whether civil, criminal, administrative, arbitrative or investigative, any appeal in such an action, suit or proceeding, and any inquiry or investigation that could lead to such an action, suit or proceeding." Doc. 40-2 at 37.

**D.     CONCLUSION**

For the foregoing reasons, *Defendant Robert Andreottola's Second Motion for Summary Judgment on All Claims and Counterclaims*, Doc. 33, is **GRANTED**.

**SIGNED** March 4, 2016.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE